BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE: U.S. Postal Service's Next Generation Delivery Vehicle Acquisitions Program Record of Decision Litigation | MDL Docket No._____ |

## MOTION FOR TRANSFER OF ACTIONS PURSUANT TO 28 U.S.C. § 1407 FOR COORDINATED PRETRIAL PROCEEDINGS

Pursuant to 28 U.S.C. § 1407 and Judicial Panel on Multidistrict Litigation Rule 6.2, the United States Postal Service and Louis DeJoy, in his official capacity as U.S. Postmaster General (collectively, "the USPS"), respectfully move the Panel for an order transferring the currently filed cases listed in the attached Schedule of Actions (collectively, "the Actions"), as well as any cases subsequently filed involving similar facts or claims ("tag-along cases"), to the U.S. District Court for the District of Columbia. The motion is supported by the accompanying memorandum of law and exhibits; Schedule of Actions, with an accompanying copy of the complaint and docket for each of the Actions; and a proof of service.

Respectfully submitted,

DATED: July 22, 2022

*/s/ Timothy S. Bishop*
Timothy S. Bishop
Brett E. Legner
Avi M. Kupfer
MAYER BROWN LLP
71 South Wacker Drive
Chicago, Illinois 60606
Tel: (312) 782-0600
Fax: (312) 701-7711
tbishop@mayerbrown.com
blegner@mayerbrown.com
akupfer@mayerbrown.com

Attorneys for United States Postal Service and Louis DeJoy

**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE: U.S. Postal Service's Next Generation Delivery Vehicle Acquisitions Program Record of Decision Litigation | MDL Docket No._____ |

**MEMORANDUM IN SUPPORT OF MOTION FOR TRANSFER OF ACTIONS PURSUANT TO 28 U.S.C. § 1407 FOR COORDINATED PRETRIAL PROCEEDINGS**

Pursuant to 28 U.S.C. § 1407 and Judicial Panel on Multidistrict Litigation Rule 6.2, the United States Postal Service and Louis DeJoy, in his official capacity as U.S. Postmaster General, (collectively, "Postal Service"), respectfully move the Panel for an order transferring the currently filed cases listed in the attached Schedule of Actions (collectively, "the Actions"), as well as any cases subsequently filed involving similar facts or claims ("tag-along cases"), to the U.S. District Court for the District of Columbia.

The Actions are three lawsuits challenging the Postal Service's February 23, 2022 Record of Decision ("ROD"), which incorporated the findings of its Final Environmental Impact Statement ("FEIS"), issued as part of its Next Generation Delivery Vehicle acquisitions program ("NGDV program"). *See* Ex. A, 87 Fed. Reg. 14,588 (Mar. 15, 2022) (ROD); Ex. B, 87 Fed. Reg. 994 (Jan. 7, 2022) (FEIS). The Postal Service owns and operates a fleet of more than 200,000 delivery vehicles. It implemented the NGDV program to replace its aging Long Life Vehicles (LLVs), the backbone of this delivery fleet, with up to 165,000 new, purpose-built vehicles over the next ten years. Ex A, 87 Fed. Reg. at 14,589. In the ROD, the Service determined that it would purchase and deploy purpose-built delivery vehicles, with up to 90% of those vehicles using internal-combustion engines ("ICE") and at least 10% using electric battery powertrains ("BEV"). *Id*. The ROD is a major, national vehicle procurement decision, by a Federal entity with constitutional and statutory duties to deliver mail to 163 million addresses, to replace aged,

1

inefficient, and costly-to-repair vehicles that lack modern safety and comfort features. Pursuant to the ROD, on March 24, 2022, the Postal Service placed an initial order for 50,000 NGDVs, of which 10,019, or 20%, will be electric vehicles (with flexibility to increase that percentage). *See* Ex. C, *Notice of Intent To Prepare a Supplement to the Next Generation Delivery Vehicles Acquisitions Final Environmental Impact Statement*, 87 Fed. Reg. 35,581 (June 10, 2022).

In each of the Actions, plaintiffs allege that the Postal Service's ROD violates the Administrative Procedure Act ("APA") and the National Environmental Policy Act ("NEPA") and its implementing regulations. Broadly, plaintiffs assert in each of the three cases that the Postal Service violated the APA and NEPA because its environmental analysis did not result in it choosing to acquire a greater minimum percentage of electric vehicles for its NGDV fleet. Plaintiffs also allege in each case that the Postal Service violated NEPA because it entered into a contract with Oshkosh Defense LLC ("Oshkosh") for Oshkosh to begin preparations, prior to the completion of the FEIS, to manufacture both conventional and electric vehicles.

These claims are most appropriately resolved at the pre-trial stage in centralized proceedings. The Actions all challenge the same administrative decision and assert similar claims under the APA and NEPA. Concurrent challenges to the same administrative decision in different districts risk inconsistent results, potentially placing the Postal Service in the untenable position of balancing conflicting obligations. Centralization of the Actions for coordinated pretrial proceedings before a single district court will address that concern. Because the Actions seek review of the ROD, and that review will be based on the administrative record, not on extra-record evidence, the Actions almost certainly will be decided (the parties all agree) on cross-motions for summary judgment, without the need for trial. And because the cases will never be remanded to the transferor courts for trial, centralization will permit the transferee court to resolve all of the

cases without risking inconsistent rulings across the country—and the uncertainty that necessarily would follow. That is all the more important in this case because the NGDV program involves the expenditure of billions of dollars to upgrade the Postal Service's vehicle fleet across the country. The confusion that would be created by inconsistent rulings would have a severe impact on a nationwide program that is critical to the competitiveness of the Postal Service and its ability to fulfill its legal obligation to deliver the Nation's mail.

In addition, because this is an APA case, the Actions must be resolved on the administrative record. But disputes often arise about the contents of the administrative record, and such disputes may arise here, creating the risk that different cases could be resolved on the basis of different administrative records. Administrative record disputes are resolved as part of pretrial proceedings and therefore are appropriate for resolution in an MDL. Centralization will ensure that all the challenges to the ROD will be resolved based on the *same* administrative record.

Further, on June 10, 2022, the Postal Service announced its intention to prepare a Supplemental Environmental Impact Statement ("SEIS") to assess changes that may result in the purchase of a greater proportion of electric vehicles for its fleet. Ex. C, 87 Fed. Reg. 35,581. And on July 21, 2022, the Postal Service announced revisions to that SEIS to take account of additional proposed operational and other changes, which it anticipates will significantly increase the minimum percentage of electric vehicles to be purchased (including in the current order of 50,000 vehicles), and provide greater flexibility to adjust the proportion of electric NGDVs ordered in response to changing market conditions and operational needs. Ex. E, *Notice to Postpone Public Hearing and Extend Public Comment Period for Supplement to the Next Generation Delivery Vehicles Acquisitions Final Environmental Impact Statement*, 87 Fed. Reg. 43,561 (July 21, 2022).

Specifically, the SEIS will assess, first, the purchase and deployment of only 50,000 NGDVs consisting of a mix of ICE and BEV powertrains with an anticipated significantly higher percentage of BEVs, and certainly not less than 50 percent, reflecting the favorable cost-benefit impacts expected from changes to the Postal Service's operational strategy and from shortening its acquisition planning horizon. Any purchase of NGDVs above the 50,000 would be subject to future supplements to the FEIS, to take into consideration the likelihood of advances in technology, changes to the cost profile and market availability of current and future technology, and further improvements and refinements in the operational strategy of the Postal Service. Second, the Postal Service will analyze the procurement within a two-year period of (1) up to 20,000 left-hand drive Commercial Off-the-Shelf ("COTS") vehicles, including as many BEVs as are commercially available and consistent with its delivery profile; and (2) up to 14,500 right-hand drive ICE COTS vehicles. *See* Ex. E, 87 Fed. Reg. at 43,561.

The mix of ICE and BEV powertrains in the NGDV fleet will change as a result of the SEIS—which the Postal Service expects to complete before any NGDV is built or delivered,[1] and which the Postal Service anticipates will result in a higher number of BEV powertrains. Because the issuance of an SEIS will overtake the current challenges to the ROD—leading to a fleet vastly different from the one contemplated therein—the Postal Service plans to seek stays or abeyances of the Actions pending completion of the SEIS. Centralization will ensure that if Actions are stayed, that will occur in a uniform manner.

---

[1] U.S. Postal Serv., *Press Release, USPS Delivery Network Improvement Plan Offers Potential to Expand Number of Electric Vehicles in Postal Fleet* (June 1, 2022) prnewswire.com/news-releases/usps-delivery-network-improvement-plan-offers-potential-to-expand-number-of-electric-vehicles-in-postal-fleet-301559688.html; Ex. D, Decl. of Thomas Quigley ¶ 18, filed in support of Oshkosh Defense's Motion to Intervene, *NRDC v. U.S. Postal Serv.*, No. 1:22-cv-3442, Dkt. 42 (July 12, 2022).

More generally, the expenditure of public and private resources to litigate on both coasts these very similar cases with common issues—and to do so when a principal barrier to purchasing electric vehicles identified in the FEIS is the Postal Service's constrained financial resources—is inefficient and counterproductive. Centralized briefing before a single district court of motions to stay or relating to the content of the administrative record, and ultimately motions for summary judgment, would serve the interest of judicial efficiency and promote the just and efficient conduct of the cases. For those reasons, and as explained below, the Postal Service respectfully requests that the Panel grant the motion and transfer the Actions for coordinated proceedings to the District of District of Columbia, where the Postal Service is located, the events that are the subject of the Actions occurred, and many counsel in the Actions are located.

## BACKGROUND

The Postal Service initiated its NGDV program to replace the majority of its fleet of aged delivery vehicles, most of which are well past their anticipated life. Under the challenged ROD, it intended to purchase up to 165,000 vehicles over the next ten years.[2] Ex. C, 87 Fed. Reg. 35,581. After a six-year competitive process to select a manufacturer, including testing vehicles from multiple manufacturers, the Postal Service awarded a contract to Oshkosh for the future production of NGDVs. *See id*. That contract covers engineering and factory tooling so that Oshkosh is in a position to manufacture both electric and internal combustion NGDVs, and it allows the Postal Service to order between 50,000 and 165,000 NGDVs over a ten-year period. *Id*. The contract

---

[2] These facts related in this section are among the common allegations from the operative complaints filed in the Actions to be transferred that are listed in the accompanying Schedule. As enumerated in the Schedule, those cases are: *Natural Resources Defense Council et al. v. DeJoy*, No. 1:22-cv-3442-AT (S.D.N.Y.) (the "New York Action") (Schedule Exhibit 1); *CleanAirNow et al. v. DeJoy*, No. 3:22-cv-2576-JD (N.D. Cal.) (the "CleanAirNow Action") (Schedule Exhibit 2); and *State of California et al. v. United States Postal Service*, No. 3:22-cv-2583-JD (N.D. Cal.) (the "States Action") (Schedule Exhibit 3).

award is expressly contingent on the Postal Service's satisfactory completion of the NEPA process. In June 2021, Oshkosh announced that it would open a new facility in Spartanburg, South Carolina to produce the vehicles. Schedule Ex. 3, States Action, Dkt. 79 at ¶ 71 (Amended Complaint).

In January 2022 the Postal Service released its FEIS, announcing that it intended to procure custom-made, right-hand drive NGDVs, up to 90% of which will have ICE powertrains and at least 10% of which will be electric. Ex. A, 87 Fed. Reg. 14,589. In February 2022, the Postal Service signed the ROD, which finalized the NEPA process and incorporated the findings and analysis of the FEIS. *Id.* (As described above, pp. 3-4, the Postal Service has since then noticed its intent to conduct an SEIS to revise these plans.)

The Actions are three lawsuits challenging the Postal Service's ROD. *See* p.5 n.2, *supra*. The Postal Service and its Postmaster General are the defendants in each of the cases, and most of the claims in the Actions are identical. Additionally, Oshkosh has moved to intervene as a defendant in each of the Actions.[3]

The New York Action was filed on April 28, 2022, by the Natural Resources Defense Council, Inc. ("NRDC") and the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America ("UAW"). It asserts four APA claims for alleged violations of NEPA and its implementing regulations: that the Postal Service allegedly (1) improperly committed irretrievable resources when it entered into a contract with Oshkosh before it issued the ROD; (2) failed to consider reasonable alternatives to the selected action; (3) failed to take a "hard look" at the environmental consequences of its action; and (4) failed reasonably to respond to the UAW's communications regarding the FEIS. Schedule Ex. 1, New

---

[3] As of the date of this motion, Oshkosh's motions for leave to intervene in all of the Actions remain pending.

York Action, Dkt. 1 at ¶¶ 185-222 (Complaint). The Postal Service answered the complaint on July 5, 2022. New York Action, Dkt. 38.

The CleanAirNow and States Actions are pending in the Northern District of California. The CleanAirNow Action was brought on April 28, 2022, by three environmental advocacy groups—CleanAirNow, Sierra Club, and Center for Biological Diversity. Those plaintiffs assert three APA claims for alleged violations of NEPA. Their claims are identical to the claims above, and allege that the Postal Service (1) improperly committed irretrievable resources when it entered into the contract with Oshkosh before it issued the ROD; (2) failed to consider reasonable alternatives to the selected action; and (3) failed to take a hard look at the environmental consequences of its action. Schedule Ex. 2, CleanAirNow Action, Dkt. 1, at ¶¶ 128-162 (Complaint).

The States Action, also filed on April 28, 2022, is brought by 17 States, the District of Columbia, a city, and a local government agency.[4] The government plaintiffs assert five APA claims for alleged violations of NEPA, three of which are identical to the claims above: that the Postal Service allegedly (1) irreversibly committed resources when it entered into the contract with Oshkosh before it issued the ROD; (2) failed to consider reasonable alternatives to the selected action; (3) and failed to take a hard look at the environmental consequences of its action. The States Action also alleges that the Postal Service (4) based the FEIS on flawed assumptions; and (5) failed to consider inconsistencies between the ROD and state plans to reduce greenhouse gas emissions. Schedule Ex. 3, States Action, Dkt. 79 ¶¶ 89-125 (Amended Complaint). The two

---

[4] Plaintiffs in this Action are California, New York, Colorado, Pennsylvania, Connecticut, Delaware, Illinois, Maine, Maryland, Michigan, New Jersey, New Mexico, North Carolina, Oregon, Rhode Island, Vermont, Washington, District of Columbia, City of New York, and the Bay Area Air Quality Management District.

Actions in the Northern District of California have been designated as related actions before the same judge. States Action, Dkt. 28 (Related Case Order) (May 10, 2022).

The Postal Service is in the process of compiling the administrative record for the ROD. It will file identical certified indices of the administrative record in all of the Actions, and serve identical records on plaintiffs' counsel in the Actions.

The private plaintiffs in the Actions are represented by different counsel and each of the 20 government plaintiffs is represented by its own counsel. The undersigned represent the Postal Service in each of the three matters. Other counsel have moved in the Actions for leave to intervene on behalf of Oshkosh. The different actions pending in different locations, the presence of different plaintiffs with distinct institutional interests, and the number of counsel make informal coordination of the Actions impracticable and burdensome for the parties, third-parties, and courts.

## ARGUMENT

### I.  The Panel Should Order Centralization.

Transfer under 28 U.S.C. § 1407 is designed to "provide centralized management under court supervision of pretrial proceedings of multidistrict litigation to assure the just and efficient conduct of such actions." *In re N.Y.C. Mun. Sec. Litig.*, 572 F.2d 49, 51 (2d Cir. 1978). Section 1407 authorizes transfer where (1) "one or more common questions of fact are pending in different districts"; (2) transfer would serve the convenience of the parties and witnesses; and (3) transfer would promote the just and efficient conduct of the actions. 28 U.S.C. § 1407(a). Each of those criteria is satisfied here.

#### A.  The Factual Questions In The Actions Are Identical.

The first criterion is satisfied because the Actions are all based on an identical set of facts— the Postal Service's administrative record for the ROD—and involve virtually identical legal

8

challenges to the FEIS and the ROD under the APA and NEPA. Centralization "does not require a complete identity or even a majority of common factual or legal issues as a prerequisite to transfer." *In re Zimmer Nexgen Knee Implant Prods. Liab. Litig.*, 802 F. Supp. 2d 1374, 1376-77 (J.P.M.L. 2011); *see also In re Katz Interactive Call Processing Patent Litig.*, 481 F. Supp. 2d 1353, 1355 (J.P.M.L. 2007). Here, the existence of a common set of facts and common legal questions strongly supports the motion for MDL treatment and transfer of the Actions to a single district court for coordinated proceedings.

Additionally, the touchstone of administrative review is the administrative record. Factual disputes about the content of the administrative record often arise. *See, e.g., Bartell Ranch LLC v. McCullough*, 2022 WL 744039, at *11 (D. Nev. Mar. 11, 2022) (explaining that the court "has already presided over an extensive round of litigation as to the contents of the administrative record"); *Deskins v. Vilsack*, 2021 WL 680286, at * 2 (D.D.C. Mar. 30, 2021) (ordering parties to advise the court on "the status of their dispute regarding the contents of the administrative record and the appendix"); *Univ. of Colo. Health at Mem'l Hosp. v. Burwell*, 151 F. Supp. 3d 1 (D.D.C. 2015) (addressing parties' dispute over contents of administrative record). Disputes concerning the administrative record should be resolved before motion practice concerning the merits of the plaintiffs' claims, and should be resolved in a centralized proceeding to ensure that the same administrative record exists in each case. *See In re Polar Bear Endangered Species Act Listing & 4(d) Rule Litig.*, 588 F. Supp. 2d 1376, 1377 (J.P.M.L. 2008) (centralizing four APA actions in two courts, where that would "prevent inconsistent pretrial rulings, particularly those with respect to the identification of the underlying administrative record. Streamlining the pretrial resolution of such issues will avoid potentially conflicting obligations placed upon the federal defendants"); *Deskins*, 2021 WL 6802986, at *2 ("To promote the efficient use of judicial resources, the Court

9

deems it necessary to address the parties' dispute regarding the administrative record and the appendix prior to resolving the parties' pending motions for summary judgment").

In addition, as noted above, the Postal Service has announced that it will revisit the challenged ROD by conducting an SEIS. Ex. E, 87 Fed. Reg. 43,561. The Postal Service expects that SEIS to be completed before any vehicles ordered under the challenged ROD are built (*see* p. 4, n.1, *supra*), and anticipates that the SEIS will result in it purchasing a significantly greater percentage of electric vehicles and different types of vehicles. And the Postal Service contemplates addressing its delivery vehicle needs on an ongoing basis rather than for the ten-year period anticipated in the ROD, enabling it to take timely account of developments in the electric vehicle market, Postal Service operational changes, and other relevant factors. Ex. E, 87 Fed. Reg. at 43,561. The Postal Service believes that in light of the very significant changes in the ROD to be addressed in the SEIS, it would be appropriate to stay the current Actions pending completion of the SEIS, and absent agreement with the plaintiffs it intends to move for a stay in each case. It would be efficient, and ensure consistency across the Actions, for those stay motions to be decided on a centralized basis.

It would likewise promote efficiency and consistency for the substantive claims raised in the Actions to be resolved in coordinated proceedings before a single district court. For instance, the complaints allege that Postal Service mis-analyzed various alleged "facts," such as projections about gas prices, that plaintiffs assert were necessary to produce a ROD that complies with NEPA. *See* Schedule Ex. 1, New York Action, Dkt. 1 ¶ 136; Schedule Ex. 2, CleanAirNow Action, Dkt. 1, ¶ 157. Whether the ROD adequately dealt with those issues is a mixed question of law and fact suitable for resolution in an MDL proceeding. If the cases are not coordinated before a single district court, there is a risk that different district courts will reach inconsistent decisions

concerning the propriety of the Postal Service's actions, and if courts determine that the Postal Service erred, that they might issue inconsistent rulings on whether the ROD should be vacated or remanded pending further administrative action.

### B.     Centralization Will Be More Convenient For the Parties.

Centralization would also serve the convenience of the parties. Without coordination of pretrial proceedings, the parties could waste time and resources engaging in concurrent motion practice (and appellate proceedings) regarding the content of the administrative record, with the risk of conflicting rulings about the content of the administrative record. Further, centralization obviates the possibility of inconsistent rulings in different district and appellate courts as to the validity of the ROD. The Panel has recognized that centralization of multiple challenges to the same agency action will "prevent inconsistent pretrial rulings and conserve the resources of the parties, their counsel, and the judiciary," yielding "substantial benefits for judicial economy and more consistent rulings as a consequence of centralization." *In re Endangered Species Act Section 4 Deadline Litig.*, 716 F. Supp. 2d 1369, 1369 (J.P.M.L. 2010). The same is true here: centralization of the Actions will "prevent inconsistent pretrial rulings" and "avoid potentially conflicting obligations placed upon the federal defendants." *In re Polar Bear*, 588 F. Supp. 2d at 1377.

The potential for inconsistent rulings and conflicting obligations would be especially problematic in this case. The Actions challenge a multi-billion-dollar program to upgrade a substantial portion of the Postal Service's national mail delivery fleet that is in dire need of replacement. The challenged program is functionally similar to a nationwide administrative rule, and consistent application across the nation is essential for the proper implementation of the program. Indeed, the Postal Service has constitutional and statutory obligations to deliver mail to

more than 300 million people across the country. U.S. Const. Art. I, § 8, cl. 7; 39 U.S.C. § 101. For the Postal Service to fulfill its universal service mission and maintain its fleet, it is imperative that the Postal Service receive consistent instruction from the courts on the contents of its administrative record and, more importantly, if any of the plaintiffs' claims succeed, on any action it may need to take to conform the ROD to the requirements of the APA and NEPA.

### C. Centralization Will Promote The Just And Efficient Conduct Of The Actions.

Finally, centralization will promote the just and efficient conduct of the Actions. The multiple Actions pending in California and New York allege the same deficiencies regarding the same Postal Service decision. With little variation, the plaintiffs in each action allege that the Postal Service violated the APA and NEPA by failing to consider alternatives to its choice of vehicles and sufficiently examine the environmental impact of its decisions, and by improperly committing resources by entering into the contract with Oshkosh before the Postal Service completed the ROD. The risk that those challenges could be decided on different administrative records, or that the courts could reach different outcomes, poses a significant threat, and could subject the Postal Service to conflicting obligations in implementing its NGDV program. Such unnecessary disruption of the NGDV program is harmful to the important, nationwide plan of improving mail delivery services.

Additionally, centralization is necessary because coordination with the two dozen different government, union, and environmental groups and their counsel across the Actions is impracticable. The sheer number of different counsel makes informal coordination of the pretrial proceedings without centralization difficult to achieve.

Moreover, centralization would not result in any meaningful delay in the proceedings. None of the Actions has proceeded very far.[5] No NGDVs will be delivered to the Postal Service until late 2023. *See* p. 4 n.1, *supra*. The Postal Service is in any event revisiting the challenged decision in light of new business proposals, by conducting an SEIS that is expected to result in a very different fleet with a large percentage of electric vehicles. Ex. E, 87 Fed. Reg. 43,561. Once the SEIS is final, the complaints in the Actions may well be amended to challenge the new ROD. Therefore, centralization will not delay one action at the expense of another, or compromise plaintiffs' ability to obtain timely and meaningful relief. This request will simply allow all Actions challenging a significant nationwide agency program to proceed at the same pace and to consistent resolution.

## II.     The Panel Should Order Centralization in the District of Columbia District Court.

The Postal Service respectfully submits that the Panel should transfer the Actions to the District of Columbia district court.

The District of Columbia district court has extensive experience handling APA challenges to federal agency action, as does the Court of Appeals for the District of Columbia Circuit. Additionally, the defendants here are located in that District, where the challenged decisions were made. And the District of Columbia itself is a plaintiff in one of the Northern District of California Actions, so there is an additional nexus between the challenged agency action and that forum. Further, counsel for plaintiffs NRDC and UAW are located in the District, as are a number of the Postal Service's counsel and intervenor's counsel. And the Center for Biological Diversity and

---

[5] Case management proposals and orders in the Actions contemplate that summary judgment briefing will occur, at the earliest, in fall 2022, after the resolution of any disputes over the contents of the administrative record. New York Action, Dkt. 37 at 3-4; CleanAirNow Action, Dkt. 45 at 6-7; States Action, Dkt. 97 at 6-7. Accordingly, an order from this Panel centralizing the Actions should not result in any appreciable delay in summary judgment proceedings.

Sierra Club are national advocacy organizations that have offices in the District. The Panel has previously found the District of Columbia to be an appropriate transferee court for centralization of challenges to agency action if it is "where the relevant decision makers are located" and plaintiffs "have a presence in the district as well." *In re Polar Bear*, 588 F. Supp. 2d at 1378. The location of the federal defendants, counsel, and plaintiffs in the District of Columbia, combined with that court's expertise in administrative review matters, establish that District as the best choice to oversee coordinated proceedings.

## CONCLUSION

For the reasons set forth above, the Postal Service respectfully submits that the Panel should transfer the Actions to the District of Columbia district court for coordinated proceedings.

Respectfully submitted,

DATED: July 22, 2022

*/s/ Timothy S. Bishop*
Timothy S. Bishop
Brett E. Legner
Avi M. Kupfer
MAYER BROWN LLP
71 South Wacker Drive
Chicago, Illinois 60606
Tel: (312) 782-0600
Fax: (312) 701-7711
tbishop@mayerbrown.com
blegner@mayerbrown.com
akupfer@mayerbrown.com

Attorneys for United States Postal Service and Louis DeJoy